**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DENNIS BURTON,

        Petitioner,

vs.                           Case No.:    3:15-cv-1467-J-34JBT
                                                3:13-cr-50-J-34JBT

UNITED STATES OF AMERICA,

        Respondent.

_____

## ORDER

      This case is before the Court on Petitioner Dennis Burton's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1; § 2255 Motion) and Memorandum of Law (Civ. Doc. 6; Memorandum).[1] As Ground One, Burton asserts that the government knowingly used false testimony at his trial. § 2255 Motion at 2. In Grounds Two through Four Burton raises claims of trial court error; specifically that the Court erred by denying a motion for judgment of acquittal, by admitting "other act" evidence under Federal Rule of Evidence 404(b), and by denying his motion to suppress evidence. Id. at 5-9. In the Memorandum Burton asserts another ground for relief, arguing that appellate counsel gave ineffective assistance by filing an "Anders Brief."[2] See Memorandum at 36-

---

[1] Citations to the record in the underlying criminal case, United States v. Dennis Burton, No. 3:13-cr-50-J-34JBT, will be denoted as "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:15-cv-1467-J-34JBT, will be denoted as "Civ. Doc. __." The Court refers to the page numbers designated by CM/ECF at the top of each page.

[2] Anders v. California, 368 U.S. 738 (1967).

1

39. The United States has responded (Civ. Doc. 8; Response), and Burton filed a reply (Civ. Doc. 9; Reply).[3] The matter is ripe for review.

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[4], the Court has considered the need for an evidentiary hearing and determines that a hearing is not necessary to resolve the merits of this action. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[5] For the reasons set forth below, Burton's § 2255 Motion is due to be denied.

## I.   Background

### A. Pretrial

On March 13, 2013, a grand jury indicted Burton, charging him with one count of conspiracy to distribute benzylpiperazine (BZP), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846 (Count One), and one count of possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two). (Crim. Doc.

---

[3]   Burton also filed an affidavit (Civ. Doc. 2), in which he reiterates the allegations in his § 2255 Motion and Memorandum.

[4]   Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before resolving a § 2255 motion.

[5]   Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point. Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

1; Indictment). Burton, who was represented by retained counsel, entered a plea of not guilty. (Crim. Doc. 12; Plea of Not Guilty).

A few months later, Burton moved to suppress all statements and evidence, including a firearm found by police during a traffic stop on September 9, 2010, while Burton and a co-conspirator were driving back to Palm Coast after allegedly selling 2,000 pills of BZP to an undercover agent. (See Crim. Doc. 16; Motion to Suppress). Burton argued that the Florida Highway Patrol officer who stopped him lacked probable cause to believe he had committed a traffic infraction, and that the officer also lacked reasonable suspicion of any other criminal activity. A United States Magistrate Judge conducted a suppression hearing (see Crim. Doc. 29; Suppressing Hearing Transcript), and thereafter received supplemental briefing from the parties (Crim. Doc. 31; USA's Suppression Memorandum; Crim. Doc. 32; Burton's Suppression Memorandum). The Magistrate Judge entered a report and recommendation on September 6, 2013, in which he recommended that the Court deny the Motion to Suppress because the evidence "was discovered pursuant to a lawful Terry[6] stop and related non-custodial questioning." (Crim. Doc. 33; Report and Recommendation at 30). Burton filed objections to the Report and Recommendation (Crim. Doc. 35; Objections), but ultimately the Court overruled the Objections, adopted the Report and Recommendation, and denied the Motion to Suppress. (Crim. Doc. 39; Order Denying Motion to Suppress).

About a month later, the United States filed a notice of intent to use "other act" evidence, pursuant to Federal Rule of Evidence 404(b). (Crim. Doc. 48; Notice). In the Notice, the government alerted Burton that it intended to introduce testimony that on a

---

[6]     Terry v. Ohio, 392 U.S. 1 (1968).

prior occasion in early 2010, Burton solicited a co-conspirator ("Co-Conspirator One") to drive him to Orlando, Florida to distribute a quantity of ecstasy; that sometime afterward, Co-Conspirator One told Burton he had a source of supply for ecstasy; that in August 2010, Burton contacted Co-Conspirator One to advise him that another co-conspirator ("Co-Conspirator Two")[7] had a customer (an undercover DEA agent) who wanted to purchase ecstasy; and that based on the previous drug relationship between Burton and Co-Conspirator One, they "worked together to establish an agreeable price and to obtain the pills that were ultimately distributed to the undercover DEA agent on September 9, 2010." Notice at 3. The government argued that this evidence was inextricably intertwined with the charged conspiracy because it explained why Burton contacted Co-Conspirator One to participate in the offense. Id. at 4. The government also argued that the evidence was not unduly prejudicial and that its probative value outweighed its potential for prejudice. Id. at 4-5. Burton countered that the evidence was extrinsic, the evidence would violate Burton's right to a fair trial because it concerned character and propensity, the evidence was unduly prejudicial, the evidence would poison the jury, and the evidence was not inextricably intertwined with the offenses charged. (Crim. Doc. 53; Response to 404(b) Notice). Before admitting the testimony, the Court heard a proffer from Co-Conspirator One, Dimitrious David, and heard additional argument from the parties. Trial Tr. Vol. II at 277-95. After reviewing the case law, the Court decided that David's testimony did not fall under Rule 404(b) because it was not extrinsic, and also that the evidence was necessary for the government to rebut Burton's defense that he was merely present when the drug

---

[7] As it became clear during the trial, Co-Conspirator One was Dimitrious David and Co-Conspirator Two was Donovan Anthony Lawrence. (Crim. Doc. 118; Trial Transcript Volume II at 275) ("Trial Tr. Vol. II"). David and Lawrence both testified against Burton at trial.

transaction occurred. (Crim. Doc. 119; Trial Tr. Vol. III at 8-14). The Court determined that the best course was to admit the evidence while giving the jury a Rule 404(b) cautionary instruction. Id. at 14-15.

## B. The Trial and Sentencing

The case went to a jury trial in February 2014. DEA Special Agent Robney Bradshaw testified that in August 2010, he arranged to purchase 2,000 pills from one of the co-conspirators, Donovan Anthony Lawrence. Trial Tr. Vol. I at 95-96. On September 9, 2010, Bradshaw met Lawrence in the food court at the Avenues Mall in Jacksonville, Florida to consummate the transaction. Id. at 100-01. According to Bradshaw, when he met Lawrence in the food court, Lawrence stated he had a friend with him and pointed to the friend. Id. at 106. Bradshaw identified Burton in court as the man to whom Lawrence pointed. Id. According to Bradshaw, he and Burton made eye contact and nodded at each other, Trial Tr. Vol. II at 65-66, which Bradshaw understood to mean that Burton and Lawrence were together, id. at 105. Bradshaw and Lawrence then left the food court for the parking lot, where Lawrence and Bradshaw exchanged the pills and money in Bradshaw's undercover vehicle. Trial Tr. Vol. I at 110-14. Bradshaw testified that Lawrence left in a blue Honda after the transaction. Id. at 115-16. However, Bradshaw later learned that surveillance observed Lawrence exit the blue Honda and enter a gray Mazda Tribute, which was driven by Burton. Id. at 118.

Next, Lawrence testified about his and Burton's involvement in the drug transaction. Lawrence testified that a man named Patrick Blackwood had asked him if he was interested in selling "ecstasy" pills to a "customer" in Jacksonville, Florida. Trial Tr. Vol. II at 153. Lawrence testified that Burton agreed to supply the pills that were later sold to

Bradshaw. Id. at 163-64. According to Lawrence, Burton agreed to pick up the pills, drive to Orlando to pick up Lawrence, and then drive to Jacksonville to deliver the pills. Id. at 173-74. When Lawrence and Burton arrived at the Avenues Mall, Lawrence testified that Burton told him to go speak to Bradshaw in the food court area. Id. at 182. Burton himself did not speak to Bradshaw but remained nearby. Id. at 183. Lawrence testified that he indicated to Bradshaw if he needed pills in the future, he would deal with Burton. Id. at 184. Lawrence testified that after the meeting in the food court, Burton directed him to take a third person, Dimitrius David, with him to the parking lot to complete the transaction. Id. at 186.[8] According to Lawrence, he went with David in the blue Honda to meet Bradshaw, where Lawrence exchanged the pills with Bradshaw for money. Id. at 187-88. After the transaction, Burton pulled up in his vehicle behind David, at which point Lawrence left the blue Honda and got into Burton's car. Id. at 188-89. Burton, Lawrence, and David then left Jacksonville for Palm Coast to divide the money. Id. at 190, 192-93. Lawrence testified that Burton paid him $750 from the transaction proceeds. Id. at 194.

Dimitrius David also testified. He described his experience working with Burton to distribute pills. David testified that he met Burton in November 2009 while working as a D.J. at a radio station in Ft. Lauderdale. See Trial Tr. Vol. II at 268; Trial Tr. Vol. III at 62-63. David testified that on one prior occasion, Burton offered to pay him $0.50 per pill to drive 2,500 pills from Ft. Lauderdale to Orlando. See Trial Tr. Vol. III at 63-65. David described how he and Burton drove the pills to a garage in Orlando, where Burton delivered the pills to a customer inside. Id. at 65-68. After the delivery, they returned to Ft. Lauderdale, where Burton paid him $1,250 from the proceeds. Id. at 69-70.

---

[8]     At trial, Lawrence referred to David as "Corey," but "Corey" was a false identity that Dimitrius David used. See Trial Tr. Vol. II at 48, 50-51, 261.

At some point after that transaction, David reconnected with an old friend of his who lived in Canada, Samuel Brevatt (nicknamed "Pinch"). Id. at 71. Brevatt offered to sell David some Ecstasy pills for $6 each, a proposal that piqued David's interest because he knew he could use Burton's distribution channel to sell the pills. Id. at 72-75. Because David knew little about the pill business, he asked Burton about the price, and Burton advised David that the price was too high because the pills would sell for only $4 each. Id. at 74-75. David negotiated a price of $2 per pill, id. at 76-77, and after some back and forth, Brevatt eventually mailed 5,000 pills to David on consignment, id. at 77-90. Burton helped David count and inspect the pills upon their arrival. Id. at 87-90.

After Burton and David received the pills, David testified that they made a plan to drive to Orlando to pick up "Jolly" – a nickname for Donovan Anthony Lawrence, Trial Tr. Vol. II at 283 – and go from there to Palm Coast where Lawrence's girlfriend lived, Trial Tr. Vol. III at 90-95. David drove the pills in his friend's Honda while Burton drove ahead of him in an SUV. Id. at 93-94. David and Burton picked up Lawrence in Orlando, drove to Palm Coast, and from Palm Coast drove to the mall in Jacksonville. Id. at 94-98. David testified that when they arrived at the mall, he waited in the car while Burton and Lawrence went into the food court. Id. at 99. When Burton and Lawrence exited the building, Burton directed Lawrence to get into the car with David in order to complete the transaction in the parking lot. Id. at 101. David drove Lawrence to meet Bradshaw in Bradshaw's vehicle, where Lawrence completed the transaction before returning to David's car. Id. at 101-02. David then drove Lawrence around to the mall's front entrance, where Lawrence moved into Burton's car. Id. at 102. At that point, the three of them returned to Palm Coast to split up the proceeds. Id. at 106-10.

A DEA forensic chemist, Ethon Jolly (no relation to Lawrence or his nickname), testified that he examined the pills Lawrence sold to Bradshaw. Trial Tr. Vol. III at 21-25. According to Jolly, the pills tested positive for BZP, a Schedule I controlled substance. <u>See</u> <u>id.</u> at 32. The government also introduced cell phone record evidence reflecting that phone numbers associated with Burton and the co-conspirators were in contact with each other leading up to and throughout the day on September 9, 2010. <u>Id.</u> at 43-53, 205-31; <u>see also</u> Gov't Exs. 7, 7A, 17, 17A, 18.

At the close of the government's case, Burton moved for judgment of acquittal. <u>Id.</u> at 282. Burton argued that the evidence showed only that Burton was present for the drug transaction, and that it was insufficient to prove that Burton participated in the conspiracy. <u>Id.</u> at 303. The government responded that it had presented sufficient evidence to prove beyond a reasonable doubt that Burton took part in the conspiracy, including Bradshaw's testimony that Burton acknowledged his presence in the food court, that Bradshaw observed Burton leave the food court with Lawrence, and that Lawrence and David testified that Burton supplied the pills that Lawrence sold to Bradshaw. <u>Id.</u> at 313-14. The Court denied the motion for judgment of acquittal. (Crim. Doc. 120; Trial Tr. Vol. IV at 20).

Burton took the stand to testify in his defense. <u>Id.</u> at 72-135. Burton denied conspiring with anyone to commit illegal activities and denied benefiting from them. <u>Id.</u> at 76. Burton also denied providing Lawrence any resources to commit illegal activities. <u>Id.</u> at 83. Burton testified that on the day of the incident, Lawrence called him about driving to Palm Coast, and that he eventually drove Lawrence to Jacksonville. <u>Id.</u> at 80, 87. However, Burton denied that anyone ever told him the illegal purpose of the trip. <u>Id.</u> at 82, 87. When he entered the mall with Lawrence, Burton denied ever making eye contact with Bradshaw.

Id. at 89. After he left the mall, Burton testified that he drove south on Interstate 95 to take Lawrence back to Palm Coast. Id. at 94.

The defense rested and Burton orally renewed his motion for judgment of acquittal, which the Court denied. Id. at 138-39. The jury heard closing arguments and the Court instructed the jury. The jury returned a verdict finding Burton guilty of Count One – conspiracy to distribute BZP – but it did not reach a verdict on Count Two – possession of a firearm in furtherance of a drug trafficking crime. (Crim. Doc. 81; Jury Verdict). The Court declared a mistrial as to Count Two (Crim. Doc. 121; Trial Tr. Vol. V at 20), and the United States notified the Court that it did not intend to retry Burton on that charge (Crim. Doc. 88).

After trial, Burton filed a written motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 and for a new trial under Federal Rule of Criminal Procedure 33. (Crim. Doc. 84; Motion for JOA); (see also Crim. Doc. 85; Response to Motion for JOA). In short, Burton argued that Lawrence and David lacked credibility and that the evidence was insufficient to prove that Burton entered into an unlawful agreement with Lawrence and David. The Court disagreed. (Crim. Doc. 91; Order Denying Motion for JOA). The Court explained that it was the province of the jury to decide whether Lawrence and David were credible, id. at 3-8, and that "other evidence presented at trial support[ed] the jury's verdict as to Count One," including Bradshaw's testimony and the telephone records indicating contact between Burton and the co-conspirators in the days and hours leading up to the September 9, 2010 transaction, id. at 8-9. Thus, the Court denied both motions. Id. at 12. The Court proceeded to sentence Burton to a term of 54 months in prison as to Count One. (Crim. Doc. 106; Judgment).

## C. The Appeal

Burton filed a timely notice of appeal (Crim. Doc. 108; Notice of Appeal), and his court-appointed appellate lawyer filed a brief pursuant to Anders v. California. United States v. Burton, No. 14–12167 (11th Cir.), Dkt. Entry of July 21, 2014 ("Anders Brief"). Counsel identified four issues for the Eleventh Circuit's consideration: (1) the Court's denial of the Motion for JOA; (2) the Court's denial of the Motion to Suppress; (3) the admission of "other act" evidence under Rule 404(b); and (4) the application of a firearm sentencing enhancement under § 2D1.1 of the United States Sentencing Guidelines. Counsel discussed each of the issues but concluded that none warranted reversing Burton's conviction or sentence. Anders Brief at 22-33. Burton received a copy of the Anders Brief on August 12, 2014, about three weeks after it was filed. (See Civ. Doc. 8-1; Pro Se Response to Anders Brief at 3). Burton responded by moving for the appointment of new counsel and requesting extra time to file a brief. Burton also argued that appellate counsel rendered ineffective assistance by filing an Anders brief and that the government committed Giglio[9] violations by presenting false evidence. Pro Se Response to Anders Brief at 3-6.

The Eleventh Circuit rejected Burton's arguments, writing:

In response [to the Anders Brief], Burton has raised several issues he contends are meritorious and moved for appointment of new counsel and an extension of time in which to file his appellate brief. Our independent review of the entire record reveals counsel's assessment of the relative merit of the appeal is correct. Because independent examination of the entire record reveals no arguable issues of merit, counsel's motion to withdraw is **GRANTED**, Burton's motions for appointment of counsel and an extension of time are **DENIED**, and Burton's conviction and sentence are **AFFIRMED**.

---

[9]     Giglio v. United States, 405 U.S. 150 (1972).

United States v. Burton, 594 F. App'x 597, 598 (11th Cir. 2015) (emphasis in original); (Crim. Doc. 129; USCA Opinion).

Burton filed a timely motion for rehearing and for extension of time (Civ. Doc. 8-2), prompting the Eleventh Circuit to recall the mandate. Burton then filed a petition for rehearing en banc, in which he argued that appellate counsel was ineffective for filing an Anders brief; that the government knowingly presented false testimony through Donovan Anthony Lawrence, Dimitrious David, and Agent Bradshaw; that the government's Rule 404(b) evidence was false; and that the Court should have found that police lacked reasonable suspicion to conduct a traffic stop of Burton's vehicle. (Civ. Doc. 8-3; Petition for Rehearing En Banc at 8-17). Some of these arguments are identical to the claims Burton raises in the instant Memorandum. Compare Petition for Rehearing En Banc at 8-12 with Memorandum at 7-12. The Eleventh Circuit summarily rejected Burton's arguments and denied rehearing. Burton, No. 14–12167, Dkt. Entry of June 23, 2015.

Burton did not petition the United States Supreme Court for certiorari review. On December 4, 2015, Burton timely filed the instant § 2255 Motion.

II. **Law**

A. **28 U.S.C. § 2255**

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C

§2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to her sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

"[A] section 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." McCleese v. United States, 75 F.3d 1174, 1177 (7th Cir. 1996) (citation omitted) (quotation omitted). "At least where there has been no intervening change in controlling law, a claim or issue that was decided against a defendant on direct appeal may not be the basis for relief in a § 2255 proceeding." Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012) (citations omitted). As such, "[t]he district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); see also Oliver v. United States, 90 F.3d 177, 179–80 (6th Cir. 1996) (holding that a movant "could not ... use a § 2255 petition to relitigate" a sentencing guidelines issue that was "fully and fairly presented on direct appeal" because there had not been "an intervening change in the law"); United States v. Prichard, 875 F.2d 789, 790–91 (10th Cir. 1989) ("We believe the other two issues raised in the motion to vacate were fairly encompassed in [the movant's] direct appeal. Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255. There is no new law applicable to [the movant's] criminal conduct that would inure to his benefit.") (citations omitted)).

## B. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a § 2255 petitioner must demonstrate both: (1) that her counsel's conduct amounted to constitutionally deficient performance, and (2) that counsel's deficient performance sufficiently prejudiced her defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). In determining whether the petitioner has satisfied the first requirement, i.e. that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks, 26 F.3d at 1036. The petitioner must show that, in light of all the circumstances, counsel's performance fell outside the "wide range of professionally competent assistance." Id. To satisfy the second requirement, that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

### III.    Discussion

### A. Ground One

In Ground One of the § 2255 Motion (which Burton labels as Ground I.A in the Memorandum), Burton claims the government presented testimony at trial that it knew or should have known was false. § 2255 Motion at 4; Memorandum at 7, 12-16. In support, Burton points to what he believes are discrepancies in the testimony of Dimitrious David and Donovan Anthony Lawrence. The discrepancies concern, for example, a telephone conversation that David purportedly testified to having with Burton in 2008, as well as the co-conspirators' travel itinerary between Ft. Lauderdale, Palm Coast, Orlando, and Jacksonville between September 8, 2010, and September 10, 2010. Burton claims that the discrepancies expose Lawrence's and David's testimony about Burton's role in the conspiracy as false.[10] Burton also claims that Special Agent Bradshaw testified that the pills did not belong to Burton, thereby proving Burton's innocence and further exposing the government's alleged use of false testimony. See Memorandum at 13.[11]

Presentation of testimony that the prosecution knows or should know to be false may violate a defendant's right to due process. Giglio, 405 U.S. at 153; Napue v. Illinois, 360 U.S. 264, 268-70 (1959). The false testimony must be "material" for its presentation

---

[10]    Burton also submits an affidavit from O'Neil Dennis, a man who claims he was a cellmate of Patrick Blackwood's. (Civ. Doc. 6-1 and 9-1; Dennis Affidavit). According to Dennis, Blackwood was in contact with Donovan Anthony Lawrence sometime after the drug transaction at issue in Burton's case. Dennis claims that Blackwood told him, based on information Lawrence conveyed to Blackwood, that Burton was not involved in the drug transaction. But Dennis's affidavit is neither useful nor admissible to the extent it concerns Burton's purported lack of involvement in the September 9, 2010, drug transaction. Dennis's statement is not based on any personal knowledge, but instead is based on hearsay from Blackwood, which in turn is based on hearsay from Lawrence.
[11]    Burton cites Federal Rule of Civil Procedure 60 in support of vacatur of his criminal conviction, Memorandum at 12-13, but Rule 60 is inapplicable at this stage because Rule 60 "simply does not provide for relief from judgment in a criminal case." United States v. Fair, 326 F.3d 1317, 1318 (11th Cir. 2003) (internal quotations and citation omitted).

to violate due process. Grossman v. McDonough, 466 F.3d 1325, 1342 n. 14 (11th Cir. 2006). False testimony is "material" if it "could ... in any reasonable likelihood have affected the judgment of the jury." Giglio, 405 U.S. at 153. However, "[a] mere claim that a witness gave inconsistent testimony is not enough to charge the prosecution's knowing use of false testimony; it may well be that the witness' subsequent statements were true, in which event the claim of inconsistency is not a constitutional objection." Price v. Johnston, 334 U.S. 266, 288, 68 S.Ct. 1049, 1062, 92 L.Ed. 1356 (1948), overruled on other grounds by McCleskey v. Zant, 499 U.S. 467 (1991)); see also Hays v. State of Alabama, 85 F.3d 1492, 1499 (11th Cir. 1996). Even if a witness's testimony contains incorrect information, such testimony does not violate a defendant's right to due process if the falsity was insignificant and it was the "result of confusion, mistake, or faulty memory." Overdear v. United States, 212 F. App'x 930, 931 (11th Cir. 2006) (quoting United States v. Diaz, 190 F.3d 1247, 1256 (11th Cir. 1999)).

Preliminarily, the Court finds that this claim is barred because Burton presented substantially the same argument on direct appeal and the Eleventh Circuit rejected it. In response to appellate counsel's Anders Brief, Burton contended that the government committed Giglio violations by presenting false evidence. Pro Se Response to Anders Brief at 4-5. The Eleventh Circuit acknowledged that "Burton … raised several issues he contends are meritorious," but concluded that its "independent examination of the entire record reveal[ed] no arguable issues of merit," and therefore affirmed Burton's conviction and sentence. Burton, 594 F. App'x at 598. In his Petition for Rehearing En Banc, Burton again claimed, in greater detail, that the government presented false testimony in violation of Giglio. See Petition for Rehearing En Banc at 8-12. Notably, some of the arguments in

the Petition for Rehearing En Banc are almost identical to some of the arguments in the instant Memorandum. Compare id. with Memorandum at 7-12. The Eleventh Circuit again rejected Burton's claims and summarily denied rehearing. Burton, No. 14–12167, Dkt. Entry of June 23, 2015. Burton has not pointed to any subsequent change in controlling authority, nor does he point to any new evidence that supports his claim that the government used false testimony (indeed, to support his claim, Burton relies almost entirely on the trial testimony).[12] Because the direct appeal substantially encompassed Burton's claim that the government used false evidence and the issue was resolved against him, he may not relitigate this issue in the § 2255 Motion. See Rozier, 701 F.3d at 684 (collecting cases).

Alternatively, Burton's claim also fails on the merits because the record refutes it. While there was at least one discrepancy in Lawrence's testimony about the route he took from Ft. Lauderdale to Jacksonville,[13] Burton misconstrues the record. Burton alleges that David gave false testimony because "David sa[id] he had a conversation [with Burton] in 2008 that was influenced by an event that took place in 2010 with a person he only met in the end of 2009. This defies the laws of physics." Memorandum at 15; see also § 2255 Motion at 4. Contrary to Burton's allegation, however, nowhere did David testify about having a conversation with Burton in 2008. Rather, David testified that he met Burton in

---

[12] To the extent Burton claims that David's testimony was inconsistent with his grand jury testimony, Burton provides no support for that conclusory assertion. Burton's counsel brought up the assertion at trial, but the government responded that there was no evidence that David had lied or provided inconsistent testimony before the grand jury. See Trial Tr. Vol. II at 83-85.

[13] As the Court recognized in its Order denying Burton's Motion for JOA, there was indeed one discrepancy in Lawrence's testimony. Lawrence initially denied traveling with Burton from Ft. Lauderdale to Orlando on September 8, 2010, but later admitted that he did travel with Burton from Ft. Lauderdale to Orlando, and that they made a stop in West Palm Beach to visit Lawrence's girlfriend. Order Denying Motion for JOA at 10 & n.6. However, the Court declined to set aside the verdict on this basis. Id. at 10.

November 2009, Trial Tr. Vol. III at 62-63, that on an occasion after they met, Burton paid him $1,250 to drive 2,500 pills from Ft. Lauderdale to Orlando, id. at 64-70, and then sometime after that transaction, David called Burton to seek advice about an acceptable price for Ecstasy, which a source in Canada had offered to sell to David for $6 per pill, id. at 71-76.[14] David never testified that he had a phone conversation with Burton in 2008 that was informed by events that occurred in 2010.

With respect to Burton's claim that Special Agent Bradshaw testified the pills did not belong to him, Burton takes Bradshaw's testimony out of context. On cross-examination, Bradshaw testified about a debriefing he conducted with Lawrence, in which Lawrence informed Bradshaw that David had asked him to lie about who owned a number of pills. See Trial Tr. Vol. II at 41-45. David wanted Lawrence falsely to tell Bradshaw that the pills belonged to Burton. Bradshaw stated that "[d]uring the course of the proffers, we learned that the drugs did not belong to Mr. Burton[.]" Id. at 46. Critically, however, Bradshaw clarified what he meant on re-direct examination:

> Q: And this statement that Anthony Lawrence made to you and the other officers that were there about Dimitrious David asking him to lie about the drugs – you had some questions about that –
>
> A: Yes, ma'am.
>
> Q: – earlier?
>
> A: That's correct.
>
> Q: Did that come up at the second proffer?
>
> A: Yes, ma'am.

---

[14] One of the prosecutor's questions made it sound as if the conversation between David and his drug source in Canada took place in 2007, see Trial Tr. Vol. III at 74, but this appears to have been a slip-of-the-tongue or a confusion. The overall context of David's testimony makes clear that David was not testifying that the conversation with his contact in Canada occurred in 2007.

Q: So the first proffer that you did, Anthony Lawrence laid everything out with regard to his involvement with Dennis Burton and Dimitrious David and the drug transaction.

A: That – yes, ma'am.

Q: Then thereafter, when you went back in August, Anthony Lawrence tells you about this statement that [Dimitrious David][15] had told him, and I believe you said –
…

Q: That Dimitrious David told him something to say about the pills being Dennis Burton's pills.

A: That's correct, yes, ma'am.

Q: And what did you understand that to mean?

A: That the pills that <u>he got arrested with</u> was [sic] the pills that he wanted to blame on Burton.

Q: And when you spoke with Anthony Lawrence throughout, was he consistent in his statements to you that the pills for the September 9th transaction – that he – who he went to <u>to get those pills</u>?

A: He said he contacted Dennis Burton.

Trial. Tr. Vol. II at 110-11 (emphasis added). Thus, Agent Bradshaw clarified that the pills for which David wanted to frame Burton – i.e., the pills that Bradshaw testified did not belong to Burton – were the pills found on David when David was arrested. Contrary to Burton's allegation, Bradshaw never testified that the 2,000 BZP pills involved in the September 9, 2010, transaction did not belong to Burton.

Insofar as Burton alleges there were other discrepancies in Lawrence's and David's testimony, such as David's testimony about what time he left which cities en route to Jacksonville (<u>see</u>, <u>e.g.</u>, Memorandum at 13-14), such discrepancies do not reflect more

---

[15] The prosecutor initially said "Dennis Burton," but as clarified on the record, the prosecutor meant "Dimitrious David." Trial. Tr. Vol. II at 110-11.

than "confusion, mistake, or faulty memory." <u>Overdear</u>, 212 F. App'x at 931. Moreover, discrepancies about such things as David's or Lawrence's route to Jacksonville are not material. In all material regards, the testimony given by Lawrence and David was consistent. Both men testified that Burton helped obtain the drugs for the September 9, 2010 transaction, that Burton helped coordinate the transaction, that Burton was present at the mall for the exchange of the drugs and money, and that Burton directed Lawrence and David to complete the transaction in the mall's parking lot. As the Court observed in denying Burton's Motion for JOA, "David's and Lawrence's testimony was for the most part consistent and was corroborated by other evidence including the testimony of Agent Bradshaw, the toll records, and Burton's presence at the Avenues Mall on September 9, 2010, when the drug transaction was accomplished." Order Denying Motion for JOA at 10-11 (footnote omitted).

To be sure, there were reasons to question Lawrence's and David's credibility. Both men were testifying for the government pursuant to a cooperation plea agreement after having been arrested for a federal drug offense. Trial Tr. Vol. II at 148-51, 266-67. Dimitrious David in particular had a lengthy criminal history that included acts of dishonesty, such as providing fake identification to federal authorities. <u>Id.</u> at 256-66. The jury even heard testimony that David had asked Lawrence to lie to Bradshaw about who owned the pills in David's possession when David was arrested. <u>Id.</u> at 41-46, 110-11. The jury was well aware of the witnesses' potential credibility flaws, which Burton's counsel emphasized during closing argument. (Crim. Doc. 120; Trial Tr. Vol. IV at 160-91). Nonetheless, the jury decided that the totality of the government's evidence (which consisted of more than Lawrence's and David's testimony) established Burton's guilt as to

Count One beyond a reasonable doubt.

Burton's allegations in Ground One do not establish that the government knowingly used false testimony in violation of Burton's right to a fair trial. Rather, Burton seeks to relitigate the witnesses' credibility under the guise of alleged <u>Giglio</u> violations. Because the claim is both procedurally barred and meritless, relief on Ground One is due to be denied.

**B. Ground Two**

In Ground Two of the § 2255 Motion (which Burton labels as Ground I.B in the Memorandum), Burton claims the Court erred by denying the Motion for JOA. § 2255 Motion at 5-6; Memorandum at 16-28. In support of this claim, Burton points to much of the same testimony and alleged discrepancies he relies on as support for Ground One.

Burton is barred from raising this claim because the issue was raised and resolved against him on direct appeal. After trial, Burton sought a judgment of acquittal or a new trial, the parties fully briefed the issues, <u>see</u> <u>generally</u> Motion for JOA; Response to Motion for JOA, and the Court denied relief, <u>see generally</u> Order Denying Motion for JOA. Burton's counsel brought the issue to the attention of the Eleventh Circuit Court of Appeals on direct review, but recommended that the issue did not warrant reversal. <u>See</u> <u>Anders</u> Brief at 22-23, 25-28. Although Burton opposed counsel's <u>Anders</u> Brief, the Eleventh Circuit determined, based on an "independent review of the entire record," that "counsel's assessment of the relative merit of the appeal is correct" and that its review of the record "reveal[ed] no arguable issues of merit." <u>Burton</u>, 594 F. App'x at 598. Burton does not point to any subsequent change in controlling authority that would have dictated a different outcome. Nor does Burton point to any additional fact that either was not or could not have been raised on direct appeal. Because Burton had a full opportunity to argue whether he

was entitled to a judgment of acquittal or a new trial, he may not relitigate this claim now in the § 2255 motion. See Rozier, 701 F.3d at 684; Nyhuis, 211 F.3d at 1343. As such, Burton is not entitled to relief on Ground Two.

### C. Ground Three

In Ground Three of the § 2255 Motion (which Burton labels as Ground 1.C in the Memorandum), Burton claims that the Court erred by admitting "other act" evidence under Federal Rule of Evidence 404(b). § 2255 Motion at 7-8; Memorandum at 28-31. As noted above, the Court admitted evidence that on a prior occasion, Burton paid Dimitrious David $1,250 to drive 2,500 ecstasy pills from Ft. Lauderdale to Orlando. In essence, Burton contends that the Court erred in admitting the "other act" evidence because the prior event never occurred. Burton again points to alleged discrepancies in David's testimony – such as David allegedly testifying to a phone conversation in 2008 that was informed by events that occurred in 2010 – to argue that David's testimony about the prior drug transaction was false.

In determining whether "other act" evidence is admissible under Federal Rule of Evidence 404(b), a court must "apply a three-part test: (1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; (3) the government must offer sufficient proof so that the jury could find that defendant committed the act." United States v. Ramirez, 426 F.3d 1344, 1354 (11th Cir. 2005) (quoting United States v. Hogan, 986 F.2d 1364, 1373 (11th Cir. 1993)) (internal quotation marks omitted). Burton's claim in Ground Three relates to the third prong, whether there was sufficient proof for the jury to find that the prior event actually occurred.

21

To satisfy the "sufficient proof" prong, the government need only introduce "sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the acts in question." <u>United States v. Edouard</u>, 485 F.3d 1324, 1344 (11th Cir. 2007). Even "the uncorroborated word of an accomplice provides a sufficient basis for concluding that the defendant committed the extrinsic acts admissible under Rule 404(b)." <u>United States v. Dickerson</u>, 248 F.3d 1036, 1047 (11th Cir. 2001) (internal quotation marks and alteration omitted). Importantly, "the question of whether a defendant actually committed a prior extrinsic act is a jury question, unless the court is convinced that the jury could not reasonably find that the defendant committed the alleged prior act." <u>United States v. Dothard</u>, 666 F.2d 498, 502 (11th Cir. 1982).

Before admitting David's testimony about the prior drug transaction, the Court heard a proffer from David. <u>See</u> Trial Tr. Vol. II at 277-86. The Court determined that the evidence was admissible because it was non-extrinsic, and alternatively, that the evidence was admissible under Rule 404(b) because it was relevant to proving Burton's intent. <u>See</u> Trial Tr. Vol. III at 8-14. With respect to whether the government had offered sufficient evidence for the jury to find that Burton committed the prior act, the Court explained:

> And next, the evidence has – there has to be sufficient evidence for a jury to reasonably conclude that the defendant committed the extrinsic act. Now, Mr. David is going to be subject to significant cross-examination with respect to his credibility, and whether a jury will believe what he has to say, I don't know.

> But determining credibility is the function of the jury; it's not the function of the Court, and so I think that Mr. David's testimony, if the jury finds it credible, would be sufficient for them to find that the defendant committed the extrinsic act.

Trial Tr. Vol. III at 12-13.

On direct review, Burton's appellate lawyer alerted the Eleventh Circuit to the issue

regarding the admission of the Rule 404(b) evidence, but advised of her assessment that the evidence was properly admitted. <u>Anders</u> Brief at 23-24, 30-31. Burton opposed the <u>Anders</u> Brief, alleging in general that the government had introduced false testimony in violation of <u>Giglio</u>. Pro Se Response to <u>Anders</u> Brief at 4-5. The Eleventh Circuit rejected Burton's claims, finding that its own independent examination of the record revealed no arguable issues of merit. <u>Burton</u>, 594 F. App'x at 598. In his Petition for Rehearing En Banc, Burton specifically argued that this Court erred by admitting the Rule 404(b) evidence because the "other act" evidence was false. Petition for Rehearing En Banc at 10. The Eleventh Circuit again rejected this argument when it summarily denied rehearing en banc. <u>Burton</u>, No. 14–12167, Dkt. Entry of June 23, 2015.

In light of the foregoing, Burton is barred from obtaining relief on Ground Three. The admissibility of the Rule 404(b) evidence was briefed on direct appeal and the Eleventh Circuit rejected the claim. Burton has not pointed to any subsequent change in controlling authority that would alter the outcome. As such, Burton is not entitled to a second bite at the apple under § 2255. <u>See</u> <u>Rozier</u>, 701 F.3d at 684; <u>Nyhuis</u>, 211 F.3d at 1343

Additionally – and alternatively – the claim lacks merit because a reasonable jury could have found by a preponderance of the evidence that Burton committed the prior act. David proffered testimony that sometime after he met Burton in November 2009, Burton offered to pay him $0.50 per pill to drive 2,500 ecstasy pills from Ft. Lauderdale to Orlando, that he and Burton made the trip together, that Burton delivered the drugs to a customer at a garage somewhere in Orlando, and that Burton paid him $1,250 afterward. Trial Tr. Vol. II at 277-86; <u>see also</u> Trial Tr. Vol. III at 63-70. David's proffer was plausible, internally consistent, and not refuted by other evidence. While Burton claims that David testified

about a physically impossible phone conversation that occurred in 2008 and which was informed by events that occurred in 2010, the transcript does not support Burton's claim that David described such a phone conversation. Even if there were inconsistencies in David's timeline of events, such discrepancies would go to David's credibility, which is for the jury to decide. Dothard, 666 F.2d at 502. As such, Burton has failed to show that the Court erred in admitting the Rule 404(b) evidence. Because the claim is both procedurally barred and lacks merit, Burton is not entitled to relief on Ground Three.

### D. Ground Four

In Ground Four of the § 2255 Motion (which Burton labels as Ground 1.D in the Memorandum), Burton claims that the Court erred in denying his Motion to Suppress. § 2255 Motion at 9; Memorandum at 31-35. In short, Burton contends that the Florida Highway Patrol officer who pulled him over while driving back to Palm Coast lacked reasonable suspicion of criminal activity, and that the officer also lacked probable cause to believe he had committed a traffic infraction. Burton contends that his Fourth Amendment rights were violated and that the Court should have suppressed any statements or evidence arising from the traffic stop.

The Fourth Amendment issue was fully litigated before this Court. A magistrate judge conducted an evidentiary hearing and issued a Report and Recommendation recommending that the Court deny the Motion to Suppress. See Report and Recommendation. The Court entertained Objections to the Report and Recommendation but overruled them, finding that the officer had conducted a lawful Terry stop. See generally Objections; Order Denying Motion to Suppress. Burton's appellate counsel raised the issue for the Eleventh Circuit's consideration, but advised the Eleventh Circuit

24

that the Court correctly denied the Motion to Suppress. Anders Brief at 23, 28-29. The Eleventh Circuit agreed with Burton's appellate counsel, finding that there were no arguable issues of merit and affirming Burton's conviction and sentence. Burton, 594 F. App'x at 598.

In light of the foregoing, Burton is barred from relitigating the Motion to Suppress because the Fourth Amendment issue was fully litigated before this Court, briefed on direct appeal, and resolved against Burton at both stages. See Rozier, 701 F.3d at 684; Nyhuis, 211 F.3d at 1343. Burton is therefore not entitled to relief on Ground Four.

### E. Ineffective Assistance of Appellate Counsel

Finally, Burton claims that appellate counsel gave ineffective assistance by filing the Anders Brief. § 2255 Motion at 4; Memorandum at 36-41. According to Burton:

> In the instant case, Appellate counsel not only filed an Anders brief without substantively addressing the Defendant's colourable claims, but she falsified the record in favor of the Government. In this, there can be no reasonableness or professionalism. Some of the more egregious falsities [are] listed in Exhibit J, which are excerpts from the Anders brief.

Memorandum at 37. However, Burton never submitted "Exhibit J" and never identified how appellate counsel falsified the record. Burton also suggests that he is relieved from satisfying Strickland's prejudice prong because he was constructively denied any assistance of counsel on appeal. Burton likens his case to Harris v. Day, 226 F.3d 361 (5th Cir. 2000). Memorandum at 37, 39. In Harris, the Fifth Circuit held that the petitioner was constructively denied any assistance of counsel on direct appeal when counsel filed an Anders brief that consisted only of a conclusory statement that the appeal was frivolous, but did not identify any arguable issues of merit. 226 F.3d at 365-66.

Burton is not entitled to relief because the record refutes his claim that he was

25

constructively denied the assistance of appellate counsel. In <u>Anders</u>, the Supreme Court described the role of counsel and the appellate court when a defendant's lawyer believes the appeal is frivolous:

> His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel— then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

<u>Anders</u>, 386 U.S. at 744.

The process outlined in <u>Anders</u> was followed here. While Burton's appellate lawyer believed the appeal was meritless, she filed a brief that comprehensively recounted the facts and identified four issues for the Eleventh Circuit's consideration: whether the Court erred in denying Burton's post-trial Motion for JOA; whether the Court erred in denying Burton's Motion to Suppress; whether the Court erred by admitting "other act" evidence under Rule 404(b); and whether the Court erred in applying a sentencing enhancement under the Guidelines for possession of a firearm. Burton acknowledges that he received a copy of the <u>Anders</u> Brief three weeks after it was filed. <u>See</u> Pro Se Response to <u>Anders</u> Brief at 3. Burton responded to the <u>Anders</u> Brief, arguing that appellate counsel was ineffective and that the government had committed <u>Giglio</u> violations. <u>Id.</u> at 3-6. The Eleventh Circuit acknowledged Burton's contentions, but determined based on an independent review of the record that appellate counsel's assessment was correct and

that there were no arguable issues of merit. Burton, 594 F. App'x at 598. Although Burton sought a rehearing en banc, the Eleventh Circuit remained unconvinced and denied the request. This case is not like Harris, where appellate counsel failed to identify any potential issues for the appellate court's consideration and failed to explain why the appeal lacked merit, and thus did not fulfill his responsibility under Anders. Cf. Harris, 226 F.3d at 365-66; cf. also Cannon v. Berry, 727 F.2d 1020, 1022 (11th Cir. 1984) (appellate counsel was ineffective under Anders where he failed to file any brief whatsoever).

While Burton accuses appellate counsel of not "substantively addressing the Defendant's colourable claims," Memorandum at 37, the record refutes this allegation. In fact, the issues that appellate counsel identified in the Anders Brief largely overlap with the issues Burton raises in the § 2255 Motion and Memorandum: the denial of the Motion for JOA, the admission of "other act" evidence, and the denial of the Motion to Suppress. Burton simply disagrees with appellate counsel's assessment of the merits, and by extension, with the Eleventh Circuit's decision on appeal. See Burton, 594 F. App'x at 598.

The only issue Burton raises in the § 2255 Motion and Memorandum that counsel did not explicitly address in the Anders Brief is the issue of the Giglio violations alleged in Ground One. However, appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009). Burton's counsel had no obligation to raise a Giglio claim because Burton's Giglio claims lacked merit for the reasons discussed in Ground One. The Eleventh Circuit implicitly reached the same conclusion as well. Burton alleged Giglio violations in both the Pro Se Response to Anders Brief and in the Petition for Rehearing En Banc, but the Eleventh Circuit rejected Burton's arguments both times.

Because the record did not (and does not) support Burton's <u>Giglio</u> allegations, it was not objectively unreasonable for appellate counsel not to raise them.

In light of the foregoing, the record belies Burton's allegation that he was constructively denied the assistance of appellate counsel or that appellate counsel gave ineffective assistance. Counsel's decision to file an <u>Anders</u> Brief was entirely reasonable. Burton is therefore entitled to no relief on this claim.

## IV. Certificate of Appealability

The undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Burton "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335–36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district

court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby **ORDERED:**

1. Petitioner Dennis Burton's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. The Clerk should enter judgment in favor of the United States and against Burton, and close the file.

3. If Burton appeals the denial of the petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 13th day of February, 2019.

**MARCIA MORALES HOWARD**
United States District Judge

lc 19

Copies:

Counsel of record
Pro se petitioner